# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DANIEL EICHELBERGER<br><br>v.<br><br>CITY OF PHILADELPHIA, CURRAN-FROMHOLD CORRECTIONAL FACILITY, and CORRECTIONS OFFICER S. WILSON | CIVIL ACTION<br><br>NO. 17-5795 |
|---|---|

**MEMORANDUM RE: CITY OF PHILADELPHIA'S MOTION TO DISMISS**

**Baylson, J.**                                                                                                         **May 7, 2018**

## I.  Introduction

At issue in this civil rights case is whether this Court should grant a motion to dismiss filed by Defendants, the City of Philadelphia, Gerald May, and Nancy Giannetta pursuant to Fed. R. Civ. P. 12(b)(6).

For reasons discussed below, the Motion to Dismiss will be DENIED IN PART and GRANTED IN PART.

## II.  Relevant Factual[1] and Procedural History

On or about December 16, 2016, Plaintiff Daniel Eichelberger was an inmate at the Alternative and Special Detention Unit of the Curran-Fromhold Correctional Facility in Philadelphia.  (ECF 9, Amended Complaint ¶ 9).  According to the Amended Complaint, Defendant Stefan Wilson, a corrections officer employed at the facility, derided Plaintiff by calling him a "junkie" drug addict and a liar.  (Id. ¶ 13).  Subsequently, Wilson allegedly

---

[1] In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).

assaulted and battered Mr. Eichenberger, fracturing Plaintiff's jaw and necessitating surgical repair. (Id. ¶¶ 14-15).

On December 26, 2017, Plaintiff filed a Complaint against the City of Philadelphia (the "City") and Wilson, alleging one Monell count against the City, and one count for violation of Eighth and Fourteenth Amendment rights against Wilson. Wilson answered the Complaint's allegations, and the City filed a Rule 12(b)(6) Motion to Dismiss. (ECF 6 and 7).

Then, on February 14, 2018, Plaintiff timely filed an Amended Complaint (ECF 9, "AC"), pursuant to Fed. R. Civ. P. 15(1)(B). The Amended Complaint added claims against two additional defendants, Gerald May and Nancy Giannetta, wardens of the facility, in both their individual and official capacities as wardens.

The Amended Complaint alleges that the City, "by and through Wardens May and Giannetta, trained [] Wilson that it is acceptable and appropriate to repeatedly punch an inmate with a closed fist and fracture said inmate's jaw whenever the inmate is in close proximity." (AC ¶ 20). Following the allegedly improper behavior by Wilson, no discipline was levied against Wilson. (Id. ¶ 21). Therefore, Plaintiff concluded, it is the City's "policy and procedure to repeatedly strike an inmate and fracture his/her jaw whenever said inmate moves in close proximity to a corrections officer." (Id. ¶ 22).

The Amended Complaint contains three counts:

    Count I:   Monell claim against the City of Philadelphia

    Count II:  Violation of the Eight and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983 against Wilson

    Count III: Violation of Civil Rights, 42 U.S.C. § 1983, against all Defendants

The City filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), on February 28, 28, 2018 (ECF 11), to which Plaintiff filed a response on March 16, 2018 (ECF 16). The City

did not avail itself of the opportunity to file a reply brief. Wilson answered the Amended Complaint on February 28, 2018. (ECF 12). Therefore, because Count II pertains only to Wilson, the present motion to dismiss only challenges Counts I and III.

### III. Summary of Parties' Contentions

The Motion to Dismiss contains three primary contentions:

(1) The amended complaint fails to include sufficient allegations regarding a municipal custom or policy;

(2) The amended complaint fails because it contains no factual allegations relating to the endorsement of an unconstitutional policy or custom by a municipal policymaker; and,

(3) The amended complaint fails to set forth a claim for supervisory liability.

Plaintiffs' Response opposes the above contentions as follows:

(1) The "Summary Report Regarding the Use of Force" expressly states that Wilson was acting in accordance with the City's policy when he struck Plaintiff for moving into Wilson's proximity;

(2) The amended complaint adequately alleges that Wilson justified his force based on Plaintiff's alleged breach of Wilson's "reactionary gap," with the reasonable inference being that the City trained Wilson to react violently in such a scenario; and,

(3) To the extent that the amended complaint improperly identifies the relevant policymaker, Plaintiff should be granted leave to amend to instead sue the "Prison Board."

(4) The amended complaint allows a reasonable inference to be drawn that Defendants May and Giannetta manifested a deliberate indifference to the rights of citizens with whom the poorly trained Wilson would interact.

### IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), this Court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).[2]

## V. Discussion

### A. Count I: Monell Claim Against the City

Count I alleges that Wilson's "treatment of [Plaintiff] was without provocation and unreasonable, and was as a direct result of the City['s] and Curran-Fromhold's custom, policy, training, and practice, including failure to discipline." (AC ¶ 27). More specifically, Plaintiff alleges that his broken jaw, and the fact that he "was vindictively forced to serve the remainder of his prison sentence in solitary confinement," deprived him of his Eighth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983. (Id. ¶ 28).

Plaintiff seeks to establish municipal liability here through three methods:

The first method is where a plaintiff identifies either a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). Plaintiff here has not identified an officially adopted policy, ordinance, statute, regulation, or decision. Therefore, he may not establish municipal liability through this method.

---

[2] Here, Plaintiff attaches several Exhibits to his response, none of which were attached to the Complaint or Amended Complaint. Nonetheless, Exhibit A (Warrant of Arrest and Affidavit of Probable Cause) is a public record and may be considered by the Court. Exhibits B and C do not appear to be public records and are not considered as part of this Court's discussion.

The second method is where a plaintiff identifies "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 691. For support, Plaintiff relies exclusively on what he claims is a "Summary Report Regarding the Use of Force," in which, he asserts "Defendants expressly state that Defendant . . . Wilson was acting in accordance with Defendants' policy when he repeatedly punched Plaintiff." (ECF 16, Response to MTD ("Response"), at 10). To the extent Plaintiff is referring to one of the exhibits attached to his response brief, it is unclear to which one he refers, for two reasons: (1) none of them are entitled "Summary Report Regarding the Use of Force," and (2) none of them states that Wilson acted in accordance with any policy. Moreover, this Court may not properly consider Exhibits B or C at this stage without converting the Motion to Dismiss into a Motion for Summary Judgment and allowing appropriate discovery, which the Court declines to do here. Because Plaintiff makes no other arguments in favor of custom-based liability, he cannot establish liability against the City.

The third method, sometimes called the City of Canton method, is where a plaintiff alleges that constitutional violations resulted from a failure to train its employees. See City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989). To properly allege a City of Canton claim, the municipality's "failure to train [must] reflect[] deliberate indifference to constitutional rights." Id. at 392. As the Third Circuit stated in Carter v. City of Phila., to demonstrate deliberate indifference on the part of a municipality, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." (citations omitted).

As for the first of the three elements for the City of Canton method, Plaintiff alleges that Defendants "Giannetta and May enjoyed decision making authority with respect to policy and procedure and enforcement thereof." (AC ¶ 5). Plaintiff also argues that the "incident underlying Plaintiff's civil action is a highly predictable consequence of training corrections officers" improperly "whenever a prisoner gets too close." (Response, at 11-12).

As for the second element, the situation—when an apparently upset inmate enters the proximity of a corrections officer—clearly involves a difficult choice. Here, the corrections officer twice punched the inmate in the mouth as a result of this breach of the "reactionary gap."

As for the third element, it is clear that a poor choice will frequently cause constitutional deprivations, given that unreasonable amounts of force, if used, can result in serious injury. This case, in which a corrections officer broke an inmate's jaw, provides such an example.

Therefore, Plaintiff states a valid claim, at this stage of the litigation, and may proceed as to Count I, solely on a "failure to adequately train" theory of Monell liability against the City.[3]

**B.     Count III: Violation of Civil Rights Against All Defendants, 42 U.S.C. § 1983**

To the extent that Count III purports to state a claim for liability against the City, it is redundant of Count I. Therefore, the Court only addresses Count III insofar as it purports to state a claim against Defendants Giannetta and May. Supervisors can be held liable under 42 U.S.C. § 1983 via three separate theories:

> (1) The supervisor is a final decisionmaker who established the policy or custom at issue,

---

[3] The Court notes that after many years of civil rights cases against Philadelphia asserting Monell claims, the Court is not aware that any plaintiff has successfully prevailed and won damages against the city on a "failure to train" Monell claim in a prison case, but because the Amended Complaint in this case survives Rule 12 standards, the case must proceed into discovery.

> (2) The supervisor participated in violating plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge an acquiesced in subordinates' violation of plaintiff's rights, or
>
> (3) The supervisor, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused the violation.

Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Plaintiff does not assert supervisory liability based on the first or second theories. Instead, he claims that Defendants Giannetta and May "created, oversaw and implemented a use of force policy whereby corrections officers were permitted to repeatedly punch an inmate for no other reason than" the inmate's proximity to the officers. (Response, at 14). Here, as discussed earlier with respect to Plaintiff's Monell claim against the City, the Amended Complaint alleges no facts indicating that Defendants Giannetta and May established or maintained any policy or custom that directly caused a constitutional harm.

Count III, insofar as it pertains to the City, Giannetta and May, will be dismissed. However, Count III remains relevant as to Defendant Wilson.

## VI. Conclusion

For the reasons stated above, the Motion to Dismiss is DENIED IN PART and GRANTED IN PART, without prejudice.

An appropriate Order follows.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**